IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DOUGLAS PIPER,

    Plaintiff,

  v.

DOCTOR RASHEED, M.D.,

    Defendant.

No. C-09-04653 CW (PR)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket no. 15)

## INTRODUCTION

Plaintiff Michael Douglas Piper, a state prisoner incarcerated at the Correctional Training Facility (CTF) in Soledad, California, filed this pro se civil rights action under 42 U.S.C. § 1983, alleging violations of his civil rights while incarcerated. As relevant to the current Order, the Court found Plaintiff's claim of deliberate indifference to his serious medical need for treatment of a cyst to his right eye lid constitutionally cognizable with respect to Defendant Dr. Karim Rasheed. Defendant moves for summary judgment on the grounds that no triable issue of material fact exists, that qualified immunity protects him from liability for the acts alleged in the complaint, and that he is entitled to judgment as a matter of law. Plaintiff opposes the motion. For

the reasons discussed below, the Court GRANTS Defendant's motion for summary judgment.

BACKGROUND

I. Factual Background

The following facts are taken from Plaintiff's Complaint and his Opposition to Defendant's Motion for Summary Judgment unless otherwise noted.

Around September 2008, Plaintiff developed a cyst on his lower right eye lid. Shortly thereafter, he was seen at the CTF infirmary by Dr. Dayalan, who agreed to refer him to an outside specialist to examine the cyst. Instead, Plaintiff was next seen by Defendant, an ophthalmologist at the CTF infirmary, on October 27, 2008. Defendant prescribed antibiotics and scheduled Plaintiff for an appointment on November 3, during which Defendant would perform a cystectomy. At some point, Defendant told Plaintiff that the prison would save money by performing the procedure at the infirmary rather than referring Plaintiff to an outside specialist.

Due to an apparent administrative error, Plaintiff did not receive his prescription by the time of the November 3 appointment. As a result, the cystectomy had to be rescheduled so that Plaintiff could complete the course of antibiotics. Around this time, Plaintiff's eyes had become "extremely painful" and he experienced loss of vision.

Plaintiff's appointments to see Defendant on November 17 and November 19 were canceled "without explanation." Plaintiff was rescheduled to see Defendant on November 21, but was informed that Defendant was out until December. On that date, Plaintiff saw Dr.

2

Bright, the infirmary's optometrist. Dr. Bright attempted to drain and lavage the cyst, without success. Dr. Bright told Plaintiff that "it had been too long and [the cyst] had solidified," and that Plaintiff "should have been taken out some time ago and seen by a specialist."

On December 5, Plaintiff saw a plastic surgeon at Natividad Hospital in Salinas, California, who examined Plaintiff and then put him on a list for surgery.

On December 8, Plaintiff saw Defendant again. Plaintiff was advised that Defendant could perform the cystectomy that day, or else Plaintiff would have to wait until an unknown date to have the plastic surgeon perform it. Plaintiff agreed to have Defendant perform the cystectomy. According to Plaintiff, Defendant performed the procedure "with very poor results." Following the attempted cystectomy, the cyst grew in size and then erupted, causing "horrific pain." Defendant prescribed a painkiller, Tylenol with codeine.

Plaintiff was scheduled for surgery with Dr. Zewert, a plastic surgeon at Natividad Hospital, on December 19. This appointment was rescheduled for December 21, and then rescheduled again for December 23. On that date, Dr. Zewert excised the cyst. It was subsequently determined that the cyst was a spindle cell carcinoma tumor. Plaintiff was told by Dr. Zewert that this type of cancer is "rapid growing when not confined to the tumor."

Over the next several months, Plaintiff underwent multiple CT scans and returned to Dr. Zewert for additional surgeries to remove and then reconstruct the eye lid. Plaintiff's medical records,

3

attached as exhibits to Defendant's motion, indicate that Plaintiff continued to see Dr. Zewert throughout 2009 and into 2010. See Defendant's Ex. O. Dr. Zewert's notes from Plaintiff's April 23, 2010 visit, the last date included, state that Plaintiff is "healing well" and that there is no sign of recurrence of the cancer. See id. at bates no. 002019.

Plaintiff has not been seen by Defendant since December 21, 2008, when Plaintiff informed Defendant that he was extremely unhappy with the results of the December 8 procedure. Defendant was scheduled to see Plaintiff on April 20, 2009, but Plaintiff refused to be seen by Defendant.

II. Procedural Background

Plaintiff initiated this action on September 30, 2009 after exhausting his administrative remedies within the California Department of Corrections and Rehabilitation. Defendant filed his Answer on March 26, 2010.

On January 27, 2011, Plaintiff filed his "Answer to defendants [sic] traverse and demand for Jury trial," in which he responded to Defendant's Answer. On March 15, 2011, Plaintiff filed his "Opposition to Defendants [sic] Motion for a Summary Judgment," which is nearly identical to the document filed by Plaintiff on January 27, 2011. In it, Plaintiff provides additional information regarding certain facts in his Complaint that Defendant denied in his Answer. Plaintiff's Opposition does not specifically address the arguments raised in Defendant's motion for summary judgment. However, it does make repeated reference to the need for discovery and expert testimony.

4

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there is no material factual dispute. Celotex, 477 U.S. at 324. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

"A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" Keenan v. Hall, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (quoting McElyea v. Babbitt, 833 F.2d 196, 197-98 & n.1 (9th Cir. 1987) (per curiam)),

amended by 135 F.3d 1318 (9th Cir. 1998) (order); see also Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (applying rule to a verified motion). Where the plaintiff states that the facts in the complaint are true under the pains and penalties of perjury, see Schroeder v. McDonald, 55 F.3d 454, 460 n.10 (9th Cir. 1995), or avers that they are "true and correct," Johnson, 134 F.3d at 1399, the pleading is "verified."

DISCUSSION

I. Plaintiff's Request for Discovery

Plaintiff states that his efforts to obtain his medical records from the CTF infirmary have been unsuccessful. However, he does not appear to have sought any discovery directly from Defendant. The Court expressly noted in its February 18, 2010 Order of Service that "[d]iscovery may be taken in this action in accordance with the Federal Rules of Civil Procedure." The Court granted Plaintiff two extensions of time to file his opposition, leaving ample time for Plaintiff to serve and obtain any necessary discovery.

Nonetheless, although not cited by Plaintiff, Federal Rule of Civil Procedure 56(d)[1] provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery. See Fed. R. Civ. P. 56(d); Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998).

---

[1] Former Federal Rule of Civil Procedure 56(f) was amended in 2010. It is now set forth in Rule 56(d).

6

Summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs. Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004); Klingele v. Eikenberry, 849 F.2d, 409, 412 (9th Cir. 1988). Summary judgment in the face of requests for additional discovery in such cases is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim. Jones, 393 F.3d at 930; Klingele, 849 F.2d at 412.

As noted above, Plaintiff's Opposition is actually a response to many of the denials in Defendant's Answer. As a result, Plaintiff refers to the need for discovery with respect to all facts disputed by Defendant, not just those relevant to the summary judgment motion. Regardless, the Court has reviewed Plaintiff's Opposition to determine whether Plaintiff raises any factual disputes that would preclude summary judgment if Plaintiff were able to obtain discovery.

While Plaintiff cites the need for depositions of eye-witnesses and discovery of his prison medical records, most of this evidence would merely add support to Plaintiff's factual assertions.[2] On summary judgment, the court must assume the truth of the non-moving party's evidence where there is a factual dispute. See Celotex, 477 U.S. at 324. Because Plaintiff's Opposition is signed, contains the statement, "I attest to all of

---

[2] For instance, Plaintiff suggests that taking a deposition of Licensed Vocational Nurse (LVN) Sheldon would help him prove that Defendant became upset when Plaintiff expressed doubts about having Defendant perform the cystectomy on December 8, 2008, a fact which Defendant denied in his Answer.

7

the above to be truthful and accurate to the best of my ability," and largely relies on personal knowledge, the Court accepts the Opposition as an affidavit. See Keenan, 83 F.3d at 1090 n.1; Johnson, 134 F.3d at 1399-1400. Therefore, it is unnecessary to continue the motion for summary judgment for Plaintiff to complete discovery that would merely corroborate what he states in his Opposition. Where the assertions in Plaintiff's Opposition conflict with Defendant's evidence, the Court will assume, as it is required to, that Plaintiff's assertions are true.

For purposes of this Order, the Court will also assume the truth of other facts that are contained in Plaintiff's Complaint, which is signed but contains no attestation to its truth. Accordingly, Plaintiff's Rule 56(d) motion for an extension of time to complete discovery is DENIED.

II. Plaintiff's Request for an Expert Witness

Plaintiff's Opposition also refers to the need for experts to address disputes about medical judgments made by Defendant. The Court will construe these references as a motion to provide him funds to obtain an expert witness, or a motion to appoint an expert witness.

The Court cannot provide funds for Plaintiff to pay an expert witness. The expenditure of public funds on behalf of an indigent litigant is proper only when authorized by Congress. See United States v. MacCollom, 426 U.S. 317, 321 (1976); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989). The plain language of 28 U.S.C. § 1915, the in forma pauperis statute, does not authorize the district court to waive witness fees or pay expenses to witnesses.

See Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1992); Tedder, 890 F.2d at 211-12. Nor does the statute authorize the court to pay the considerably greater expense of hiring expert witnesses or to force experts to work without compensation. Plaintiff's inability to hire an expert to testify in his case does not amount to a constitutional violation because a prisoner's constitutional right of access to the courts is limited to the presentation of claims to the court concerning conditions of confinement and convictions; it does not ensure the inmate's ability to litigate such claims effectively. See Lewis v. Casey, 518 U.S. 343, 354 (1996).

Federal Rule of Evidence 706 allows the Court to appoint an expert; however, in a civil rights action such as this, Rule 706(b) contemplates that the expert would be paid by the parties. Here Defendant would have to bear the entire cost because Plaintiff is unable to pay for the expert. There is no showing that it is appropriate or fair to require Defendant to bear the sole burden of paying an expert witness to present Plaintiff's point of view.

Accordingly, Plaintiff's motion for an expert witness is DENIED.

III. Defendant's Motion for Summary Judgment

    A.    Deliberate Indifference to Serious Medical Needs

Plaintiff points to several acts or omissions by Defendant in support of his claim that Defendant was deliberately indifferent to Plaintiff's serious medical needs. Among them are several delays in treating Plaintiff resulting from canceled and postponed appointments; Defendant's failure or refusal to refer Plaintiff to an outside specialist; and Defendant's negligence in attempting to

9

remove the cyst.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at 1059 (citing Hudson v. McMillian, 503 U.S. 1, 5 (1992)). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

There is no dispute in this case that Plaintiff had a serious medical need. The cyst on his lower right eye lid caused him extreme pain and discomfort, as well as vision loss. Plaintiff was prescribed antibiotics and painkillers. He saw a number of different doctors; each one either saw fit to attempt treatment or

10

refer him to another doctor for treatment. When the cyst was finally removed, it was determined to be a cancerous tumor. Plaintiff has undergone removal and reconstruction of the entire lower right eye lid and has continued to see Dr. Zewert to check for recurrence of the cancer.

The dispositive issue, then, is whether Defendant exhibited deliberate indifference in his treatment of Plaintiff's cyst. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." Id. If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established, therefore, there must be a purposeful act or failure to act on the part of the defendant and resulting harm. See McGuckin, 974 F.2d at 1060; Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, but the existence of serious harm tends to support an inmate's deliberate indifference claims. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing McGuckin, 974 F.2d at 1060).

Once the prerequisites are met, it is up to the factfinder to

determine whether deliberate indifference was exhibited by the defendant. Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care. See McGuckin, 974 F.2d at 1062.

          1.   Delays in Treatment

Plaintiff alleges that there were several delays in Defendant's attempts to treat him, which delayed the final decision to refer Plaintiff to the plastic surgeon. Most significantly, the cystectomy scheduled for November 3, 2008 was not performed until December 8, 2008. While delays in providing treatment may show deliberate indifference, McGuckin, 974 F.2d at 1062, those delays must be attributable to the defendant. Walker v. Benjamin, 293 F.3d 1030, 1038 (7th Cir. 2002) (summary judgment appropriate where no evidence that delays between visit with defendant doctor and visit with outside specialist, or delays in plaintiff's receipt of medication, were attributable to defendants).

In this case, the cystectomy procedure was initially postponed because Plaintiff did not receive the antibiotics Defendant prescribed. Defendant does not dispute this fact, but claims the delay was outside of his control. Plaintiff has not presented evidence that Defendant was directly responsible for the delays, but asserts that it was Defendant's responsibility "to assure procedures are followed in a timely manner." Assuming that Defendant was responsible for assuring that other prison staff members followed procedures for providing prescriptions, Defendant cannot be liable unless he "participated in or directed the

12

violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff does not indicate that Defendant knew of the failure to provide Plaintiff's prescription until the appointment on November 3. Therefore, the delay does not amount to evidence of Defendant's deliberate indifference.

Plaintiff points to further delays resulting from canceled appointments with Defendant. Plaintiff's appointments to see Defendant on November 17 and November 19 were canceled "without explanation." Again, Plaintiff does not allege that these cancellations were in any way attributable to Defendant. At Plaintiff's appointment on November 21, Plaintiff was informed that Defendant was out until December. However, Plaintiff did not go untreated in the meantime. He saw Dr. Bright on November 21 and December 1. Dr. Bright apparently attempted to drain and lavage the cyst, before deciding to refer Plaintiff to an outside plastic surgeon. Plaintiff was then seen by an outside plastic surgeon on December 5. Therefore, because Plaintiff continued to receive treatment, any delays caused by the cancellations with Defendant on November 17, 19 and 21 were negligible.

Moreover, it appears that Defendant attempted to end the delay Plaintiff was experiencing. When Defendant finally saw Plaintiff on December 8, he advised Plaintiff that there could be further delays if Plaintiff waited to have the procedure done by the outside plastic surgeon. Therefore, Plaintiff consented to Defendant performing the procedure. That Defendant attempted to treat Plaintiff on-site weighs against Plaintiff's argument that

13

Defendant was deliberately indifferent to his medical needs.

Additional delays experienced by Plaintiff before he finally underwent surgery to have the cyst removed on December 23 also do not appear to be attributable to Defendant. The surgery was initially scheduled with Dr. Zewert for December 19, but was rescheduled for December 21, and then rescheduled again for December 23. Plaintiff does not allege that Defendant was responsible for either rescheduling. Because the delays alleged by Plaintiff were either not attributable to Defendant or were negligible, as Plaintiff continued to receive treatment, these delays are insufficient to amount to evidence of Defendant's deliberate indifference.

    2.   Failure to Refer to Outside Specialist

Plaintiff also argues that Defendant exhibited deliberate indifference because he failed to refer Plaintiff to an outside specialist. According to Plaintiff, Defendant explained to him that the prison would save money by his performance of the cystectomy at the CTF infirmary. The referral to an outside plastic surgeon was made only after "the condition became well beyond the abilities" of Defendant. Although prison authorities have "wide discretion" in the medical treatment afforded prisoners, see Stiltner v. Rhay, 371 F.2d 420, 421 (9th Cir. 1967), a failure to provide treatment because of a tight budget may support a claim of deliberate indifference, Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (reversing dismissal for failure to state a claim where budgetary constraints were sole explanation in record for failure to treat plaintiff's hernia).

Notably, Plaintiff has not alleged a complete failure to provide treatment. Plaintiff acknowledges that Defendant attempted to treat Plaintiff, first prescribing antibiotics and then attempting excision of the cyst with his consent. Plaintiff also acknowledges that he was eventually seen by Dr. Zewert, who performed the surgery and continues to monitor Plaintiff's progress at regular follow-up appointments. Thus, although Defendant's initial treatment plan may have been partially motivated by budgetary constraints, these constraints did not ultimately prevent Plaintiff from receiving the treatment he needed.

Instead, Plaintiff's complaint appears to be that he should have been seen by an outside specialist earlier, as was initially recommended by Dr. Dayalan. However, a prison inmate has no independent constitutional right to outside medical care rather than the medical care provided by the prison staff at the institution. See Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986), cert. denied, 479 U.S. 930 (1986). While Plaintiff may have preferred earlier outside treatment without regard to the cost, he had no independent right to see the outside plastic surgeon.

Nevertheless, Plaintiff suggests that, in his opinion, the extensive surgery he has undergone might have been unnecessary had he been referred to outside treatment earlier. While the opinions of Plaintiff, a former licensed paramedic, registered nurse, and emergency and trauma room technician, are not uninformed, they still amount to no more than a difference of opinion with respect to Defendant's course of treatment.

"A difference of opinion between a prisoner-patient and prison

medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. See Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Plaintiff has not shown that Defendant's decision to attempt the cystectomy himself was medically unacceptable under the circumstances. As Plaintiff acknowledges, his condition appeared to be a sebaceous cyst, and he consented to Defendant's attempt. Only after the cyst was removed was it determined to be a cancerous tumor. Plaintiff does not suggest that Defendant should have known the growth was cancerous, only that an outside specialist might have uncovered this fact sooner. Defendant appears to have had no way of knowing the true nature of Plaintiff's condition.

Finally, Dr. Bright's statement that Plaintiff "should have been taken out some time ago and seen by a specialist" does not show that Defendant's decisions were medically unacceptable. At

16

best, there may have been a difference of medical opinion between Defendant and Dr. Bright, which would be insufficient to prove deliberate indifference. However, it is not even clear that there was a difference of opinion. By the time Dr. Bright saw Plaintiff on November 21, Defendant had not seen Plaintiff since November 3. Defendant may have agreed with Dr. Bright had he seen Plaintiff on November 21. Indeed, when Defendant saw Plaintiff on December 8, he apparently believed that performing the procedure on the spot was preferable to subjecting Plaintiff to further delays as he waited for a surgery appointment at Natividad Hospital. It is difficult to see how Defendant's recommendation that the procedure be performed sooner rather than later was medically unacceptable.

### 3. Negligence

Finally, Plaintiff seems to suggest that Defendant was negligent in attempting the cystectomy, which ruptured the tumor and led to its growth and potential spread. However, a claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. See Toguchi, 391 F.3d at 1060-61; Hutchinson v. United States, 838 F.32d 390, 394 (9th Cir. 1988) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's 8th Amendment rights."). As discussed above, Defendant appears to have had no way of knowing that the cyst was actually a cancerous tumor. Even if Defendant should have known of the risk, and his decision to attempt the cystectomy was negligent, however, this is insufficient to show deliberate indifference.

The facts and allegations in Plaintiff's Complaint and

17

Opposition do not support his claim that Defendant exhibited deliberate indifference in treating him. On the contrary, Plaintiff's own admissions show that Defendant exercised his medical judgment and that Plaintiff received proper treatment, albeit not without delays. Accordingly, Defendant's motion for summary judgment is GRANTED.

II. Qualified Immunity

Defendant claims, in the alternative, that even if Plaintiff's allegations revealed a constitutional violation, qualified immunity would protect him from liability on Plaintiff's deliberate indifference claim.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). A defendant may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Id. at 205. The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual

18

constitutional right and whether such right was "clearly established." Pearson v. Callahan, 555 U.S. 223, 231 (2009). Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant cannot be on notice that such conduct is unlawful. See Rodis v. City & County of San Francisco., 558 F.3d 964, 970-71 (9th Cir. 2009). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable defendant that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202.

On these facts, viewed in the light most favorable to Plaintiff, Defendant prevails as a matter of law on his qualified immunity defense because the record establishes no Eighth Amendment violation. However, even if a constitutional violation had occurred with respect to Plaintiff's claim of deliberate indifference to his serious medical needs, in light of clearly established principles at the time of the incident, Defendant could have reasonably believed his conduct was lawful. See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049-50 (9th Cir. 2002).

Defendant does not dispute that Plaintiff's right to be free from deliberate indifference to his serious medical needs was clearly established during the period within which the injuries complained of occurred. Given the circumstances, however, Defendant's actions were reasonably calculated to treat Plaintiff's condition. Based on the evidence available to Defendant, his actions were reasonable and appropriately tailored to Plaintiff's condition and symptoms. Although Defendant's efforts to remove the

19

cyst were unsuccessful, he referred Plaintiff to an outside specialist who successfully removed the cyst and diagnosed the spindle cell carcinoma, which does not appear to have spread beyond Plaintiff's eye lid. In hindsight, a different approach may have spared Plaintiff some of the pain he experienced, but Defendant did not know that from the observations he was able to make of Plaintiff's condition. Therefore, a reasonable person in Defendant's situation could have believed that his actions did not violate Plaintiff's clearly established constitutional rights.

Accordingly, Defendant is entitled to qualified immunity with respect to Plaintiff's Eighth Amendment deliberate indifference claim, and his motion for summary judgment on this claim is GRANTED on those grounds as well.

CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's sole claim, for deliberate indifference to serious medical needs, is GRANTED. (Docket No. 15.) The Clerk of the Court shall enter judgment and close the file. All parties shall bear their own costs.

IT IS SO ORDERED.

Dated  AUG 0 9 2011

CLAUDIA WILKEN
United States District Judge